UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GREATER ST. LOUIS CONSTRUCTION LABORERS WELFARE FUND, et al, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 4:19-CV-00094-AGF ) |
| CONCRETE CORING COMPANY OF ST. LOUIS, INC., | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' motion for summary judgment in this action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1145, to recover delinquent fringe benefit contributions. ECF No. 20. For the reasons set forth below, the motion will be granted in part and denied in part.

### BACKGROUND

**Collective Bargaining Agreement**

Plaintiffs are Greater St. Louis Construction Laborers Welfare Fund and three other employee benefit plans,[1] their respective trustees, and two local unions.[2] Defendant Concrete Coring is a construction company that hires Plaintiffs' union members. By a

---

[1] Other fund Plaintiffs are the Construction Laborers Pension Trust of Greater St. Louis, the St. Louis Vacation Fund-Vacation Plan, and the AGC-Eastern Missouri Laborers' Joint Training Fund.

[2] Union Plaintiffs are Local Unions 42 and 110 of the Laborers International Union of North America, AFL-CIO.

signatory Agreement dated March 14, 2014 (ECF No. 15-1), Defendant agreed to be bound by Plaintiffs' collective bargaining agreement (the "CBA").  ECF No. 15-2.  Article V of the CBA requires Defendant to make employee benefit contributions on behalf of each union laborer at a per-hour rate and to remit monthly reports reflecting those hours.  Specific sections of the CBA pertaining to the Welfare Trust Fund (§ 5.03) and the Construction Laborers' Pension Trust (§ 5.04) state that the employer will contribute specific amounts per hour for each actual hour worked by each employee covered by the agreement.  The section pertaining to the St. Louis Laborers' Vacation Fund (§ 5.05) states, "The employer will deduct one dollar ($1.00) for each hour worked . . ."  The section pertaining to supplemental dues (§ 5.08) likewise states, "The Employer shall deduct and withhold from wages of all employees covered by this Agreement supplemental dues."  Section 5.09 binds Defendant to certain trust documents of the Plaintiff funds.  Section 5.10 imposes a penalty of 20% as liquidated damages on delinquent contributions.  Section 5.11 requires Defendant to pay Plaintiffs' audit costs, attorney fees, and interest on the collection of unpaid contributions.  Other provisions require employers to make contributions for non-local union members for work performed within the local union's jurisdiction.  CBA § 1.05, Art. XIV, and Appendix A.

**Defendant's Bankruptcy and Related Procedural History**

Defendant's financial difficulties precede this case.  Defendant filed a petition for bankruptcy protection in 2014.  Earlier claims by Plaintiffs were included in the bankruptcy payment schedule.  ECF No. 1.

Plaintiffs filed the present complaint in January 2019 seeking payments for periods after the bankruptcy case, i.e., as of March 2015.  Throughout the history of this case, Defendant has been defending a lawsuit filed by its primary financer in Missouri state court and has endeavored to slow proceedings in this Court pending the outcome of that litigation.[3]  Defendant answered Plaintiff's original complaint in February 2019 and moved to continue the Rule 16 scheduling conference from April to June.  On June 13, 2019, the parties filed their joint scheduling plan.  On June 18, Plaintiffs filed a motion for partial summary judgment on Count III of the original complaint (now Count IV of the amended complaint).  On June 24 the parties appeared for the Rule 16 conference and suggested that entry of a Case Management Order would not be constructive, as they were attempting to settle the matter.  At the parties' request, the Court stayed summary judgment briefing to permit further negotiations.  ECF No. 16.

In August 2019, the parties reported that Defendant needed additional time to review and respond to audits of its payroll records.  The Court granted that time and extended the stay on summary judgment briefing.  ECF No. 19.  In September 2019, the parties reported that they were unable to settle and wished to proceed with briefing.  The Court ultimately granted Plaintiff's first motion for partial summary judgment.  ECF No. 32.  Meanwhile, Plaintiffs also filed the present, second motion for summary judgment and amended its complaint.  ECF Nos. 20, 27.  In late December 2019, Defendant

---

[3]   The state court case is *Liquid Capital Exchange, Inc. v. Concrete Coring Company of North America, Inc. and Howard H. Hall, III*, Case No. 1922-CC12060 (22nd Judicial Circuit, City of St. Louis, Missouri).

notified the Court that it was in receivership in state court, resulting in a 60-day stay. ECF No. 33. The Court granted Defendant an additional 30 days thereafter to respond to Plaintiffs' second motion for summary judgment. ECF No. 34. Hearing nothing from the parties at the end of that period, the Court issued a show cause order in April 2020. ECF No. 35. In May, Defendant changed counsel and requested additional time to respond. ECF Nos. 37, 38. In June, the parties requested yet more time for renewed settlement talks. ECF Nos. 41, 42. In July, the parties submitted status reports acknowledging that Defendant was unable to liquidate the assets needed to settle due to the state court litigation with its principal financer. ECF No. 44. As such, Plaintiffs moved to proceed with summary judgment briefing.

As of final briefing in August 2020 (ECF No. 54), after Plaintiffs accepted certain credits asserted in Defendant's responsive filings (ECF No. 49), Plaintiffs seek $361,675.43, representing delinquent contributions, liquidated damages, interest, and audit costs following audits of Defendant's records for the periods of March 15, 2015 through June 30, 2016 (Count I), and July 1, 2016 through November 30, 2018 (Count II), additional reported but unpaid benefits through 2018 and 2019 (Count III), and unpaid benefits reflected in the paystubs of two employees named Boyer (Count III).

Due to the unusual procedural history of this case, no Case Management Order ever issued, and the parties' filings belie any desire for formal discovery or mediation. Upon review of the record, however, the Court finds that such proceedings are necessary. The Court will grant summary judgment to the extent Plaintiffs' claims are undisputed

and will direct the parties to submit a scheduling proposal for further proceedings on the remaining disputed claims.

## DISCUSSION

**Legal Standards**

"Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-movant, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Metro. Prop. & Cas. Ins. Co. v. Calvin*, 802 F.3d 933, 937 (8th Cir. 2015) (citation omitted). In opposing summary judgment, the non-movant may not "simply point to allegations" in the pleadings, *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004), or "rest on the hope of discrediting the movant's evidence at trial." *Matter of Citizens Loan & Sav. Co.*, 621 F.2d 911, 913 (8th Cir. 1980). Rather, the non-movant "must identify and provide evidence of specific facts creating a triable controversy." *Howard*, 363 F.3d at 800. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)). The existence of a factual dispute alone is not enough to avoid summary judgment; rather, the dispute must be outcome determinative under the applicable law. *Greater St. Louis Const. Laborers Welfare Fund v. Masonry Concepts, Inc.*, 4:13CV418 TCM, 2014 WL 1648739, at *3 (E.D. Mo. Apr. 24, 2014) (citing *Hammer v. City of Osage Beach,* MO, 318 F.3d 832, 837 (8th Cir.2003)).

Plaintiffs invoke Section 515 of ERISA, which provides:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.  Under ERISA § 515, benefit funds may collect only those contributions that an employer is contractually obligated to pay.  *Carpenters Fringe Benefit Funds of Ill. v. McKenzie Eng'g*, 217 F.3d 578, 582 (8th Cir. 2000).  Ordinary contract law governs the interpretation of CBAs.  If a CBA is unambiguous, then the parties will be bound by its terms.  *Cent. States, Se. & Sw. Areas Pension Fund v. Indep. Fruit & Produce Co.*, 919 F.2d 1343, 1350 (8th Cir. 1990).  A contract is ambiguous only if it is reasonably susceptible of more than one construction, giving words their plain and ordinary meaning.  *Id.*

**Count I**

Plaintiffs first performed an audit of Defendant's records for the period of March 15, 2015 through June 30, 2016.  Auditor Ashley Suemnicht stated by affidavit that Defendant owed unreported contributions and supplemental dues of $39,716.16, liquidated damages of $12,819.99, and interest of $12,205.51.[4]  Her firm billed Plaintiffs $11,378.00.  ECF No. 20-1.

Defendant contends that it owes nothing for this period.  ECF No. 49.  Rather, according to Defendant's Chief Financial Officer, Tina Maxwell, Defendant overpaid

---

[4] A different auditor, Ron Graves, confirmed these figures in a later affidavit.  ECF No. 20-6.

1,365 hours during the period. ECF No. 51. Ms. Maxwell cited multiple bases for her challenge to Plaintiffs' audit: alleged discrepancies between the auditor's methods of accounting for hours and Defendant's practice of paying certain benefits in arrears; hours worked by non-local union members; and hours worked as travel time, shop time, or other kinds of work for which fringe benefits are not owed. *Id.* Ms. Maxwell created a spreadsheet with notations indicating where she disputes Plaintiffs' audit figures for one of the foregoing reasons (e.g., where hours should have been coded as travel time). ECF No. 51-1.

Plaintiffs advance several arguments in reply. ECF No. 54. First, Defendant failed to produce any underlying payroll documentation to substantiate its offsets. Second, contributions are owed for all hours worked, and Defendant identifies no exception in the CBA or other legal authority distinguishing between labor work and other tasks. Third, even had Defendant substantiated its claim regarding travel time, a benefit plan may refuse to refund mistaken contributions where it would result in a deduction of pension credits for employees. *Greater St. Louis Construction Laborers Welfare Fund v. Park-Mark, Inc.*, 700 F.3d. 1130 (8th Cir. 2012) (affirming dismissal of an employer's counterclaim for restitution, citing laches and other equitable factors). Fourth, the two-year period in which Plaintiffs' internal policies might permit such a refund has long expired. And fifth, the CBA requires contributions for any non-local labor working in the local jurisdiction.

Given the parties' competing affidavits and the incomplete state of the record on this count, the Court concludes that summary judgment is not appropriate for several

reasons. Although Defendant undoubtedly produced various payroll records for purposes of the audit, Plaintiffs filed the present motion before any formal discovery occurred. Defendant may have documentation supporting Ms. Maxwell's notations. And though neither party cites any provision in the CBA or elsewhere distinguishing among different types of work hours, Plaintiffs appear to concede in their reply brief that travel time is not subject to contributions. ECF No. 54 at 3. Further, the procedural posture of *Park-Mark* was markedly different than the present case. There, the trial court exercised its discretion in dismissing a counterclaim for restitution based on equitable considerations. The financial facts were undisputed. Plaintiffs' present motion for summary judgment invites a legal conclusion based on disputed accountings. And while Mr. Graves refers to a fund policy barring refunds after two years, Plaintiffs have not included any such document in the record.

In short, Ms. Maxwell's affidavit and supporting spreadsheet raise factual questions that cannot be resolved as a matter of law on the present record. *See Greater St. Louis Const. Laborers Welfare Fund v. Masonry Concepts, Inc.*, 4:13CV418 TCM, 2014 WL 1648739, at *4 (E.D. Mo. Apr. 24, 2014) (denying summary judgment based on competing affidavits and accountings). Consequently, Plaintiffs' motion for summary judgment on Count I must be denied.

**Count II**

A second audit was performed for the period of July 1, 2016 through November 30, 2018. Auditor John Massa stated by affidavit that Defendant owed $145,218.07 in unpaid contributions, $13,735.12 in supplemental dues, $30,504.46 in liquidated

damages, and $6,619.86 in interest for this period.  ECF No. 20-4.  Mr. Massa's firm billed Plaintiffs $3,468.  Another auditor, Ron Graves subsequently reduced these amounts because Plaintiffs included some of them in Count III as reported but unpaid contributions.  ECF No. 20-6.  After these adjustments, Mr. Graves stated that Defendant owed unreported contributions of $24,557.27, supplemental dues of $2,297.40, liquidated damages of $5,448.49 and interest of $2,033.97 for the second audit period.  ECF Nos. 20-6 at 2 and 20-8 at 2.

Defendant does not challenge Plaintiffs' claims with respect to this count.  ECF No. 54.  As such, summary judgment will be granted in Plaintiffs' favor on Count II as adjusted.

**Count III**

Separate from unreported amounts comprising Count II, Plaintiffs claim additional amounts from February 2018 to August 2019 that Defendant reported but never paid, representing $184,609.73 in contributions and $58,198.51 in liquidated damages.[5]  Defendant does not challenge these amounts.  As such, summary judgment on Count III will be partially granted for the Plaintiffs on this claim.

Plaintiffs also claim $4,466.34 (reduced from $12,697.52) corresponding to the

---

[5]  Remittance reports covering February 2018 to January 2019 are included in the record (ECF 15-3), albeit without clear figures matching Mr. Graves' affidavit (ECF No. 54-1).  Figures for the period of February 2019 to August 2019 are supported only by Mr. Graves' affidavits.  ECF Nos. 20-6, 54-1.  These figures are reduced from Plaintiffs' initial filings to reflect a payment of $12,559.31 for March 2019.  ECF Nos. 49, 49-1.

paystubs of two employees named Boyer.[6]  Defendant asserts that all amounts corresponding to the Boyers' paystubs are already included elsewhere in Plaintiffs' audit. Plaintiffs maintain that the reduced amount is still owed.  The record on this point consists only of the parties' competing affidavits.  Neither party has provided the paystubs, explained the work periods covered by the paystubs, or pointed to where in the audits these amounts were or were not included. This record does not support summary judgment.  With respect to these amounts, Plaintiffs' motion for summary judgment on Count III will be denied.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Plaintiffs' motion for summary judgment (ECF No. 20) is **GRANTED in part** and **DENIED in part** as follows:

1. On Count I, the motion is denied.

2. On Count II, the motion is granted.

3. On Count III, the motion is granted with respect to unreported hours from February 2018 to August 2019 and denied with respect to amounts corresponding to the Boyers' paystubs.

**IT IS FURTHER ORDERED** that the parties shall confer and, within 14 days of this Order, shall submit (1) updated totals and interest on amounts awarded herein,

---

[6]   These figures are reduced from Plaintiffs' initial brief (ECF No. 21), reflecting a partial correction.  ECF No. 54-1 at ¶ 15, ECF No. 52-1.  The workers' paystubs are not contained in the record, nor is the Court able to identify any other evidence supporting the initial or revised figures.  Mr. Graves' affidavit is the only evidence supporting any of the figures in Count III.  *Id.*

after which the Court will enter judgment on those claims, and (2) a revised joint scheduling proposal for further proceedings on Plaintiffs' remaining claims.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 17th day of August 2021.